IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL RICHMOND, as Trustee of the Liberty Institute Trust, Plaintiff, | ) ) ) ) | |
| v. | ) ) | 06 C 1032 |
| NATIONAL INSTITUTE OF CERTIFIED ESTATE PLANNERS, et al., Defendants. | ) ) ) ) | |

## MEMORANDUM AND ORDER

According to the complaint filed in this trademark action, Michael Richmond and Rex Black, the co-trustees of the Liberty Institute Trust, coined the term "certified estate planner" ("CEP") for use as a trademark in connection with the provision of educational services for estate planners. The trustees entered into negotiations to license the use of the CEP mark and eventually, this suit against defendants The National Institute of Certified Estate Planners ("NICEP") and NICEP's Directors followed.

NICEP presently seeks to dismiss Richmond's claims against it based on civil conspiracy (Count V), conversion (Count VI), and trespass to chattel (Count VII). In turn, NICEP's Directors, who have been sued in their individual capacities, seek to dismiss the claims against them, contending that this court cannot exercise personal jurisdiction over them. For the reasons set forth below: (1) the Directors' motion to dismiss for lack of personal jurisdiction is granted so all the counts directed at them are dismissed without prejudice; (2) NICEP's motion to dismiss the civil conspiracy claims against the Directors is stricken as moot since the court has already dismissed this count based on lack of personal jurisdiction; and (3) NICEP's motion to dismiss Richmond's conversion and trespass to chattel claims is granted.

I.      **Background**

The court's task in providing a summary of the relevant facts is hampered by the fact that the parties did not highlight the relevant facts in their memoranda. Indeed, they did not include any summary of the facts whatsoever. With this in mind, the court will attempt to summarize the allegations in Richmond's 104-paragraph complaint, and will accept the allegations therein as true for the purpose of resolving the defendants' motions to dismiss.

Basically, Richmond alleges that he owns the CEP mark. This mark is associated with estate planning education and signifies that the person styling him or herself as a CEP has completed a ten-module unit of study in the area of estate planning, passed two examinations, and maintained a continuing education relationship with the program.

Beginning in late 2001, Richmond began to explore options to license the CEP mark. Eventually, Richmond and defendants Timothy Taylor, Dean Beckner, and David Clancy entered into an agreement allowing NICEP to use the CEP mark for three years for a total cost of $216,000. Shortly afterwards, Becker filed articles of incorporation in Indiana to incorporate NICEP.

In the meantime, Rex Black (the other trustee of the Liberty Institute Trust who, along with Richmond, came up with the CEP concept) also entered into an assignment which transferred the rights to use the certifications "CEP" and "Master CEP" to unspecified persons. Black later executed another assignment which transferred all rights to the CEP mark to NICEP. The second assignment thus purported to give NICEP the right to use the CEP mark. NICEP's lawyer recorded the second assignment with the United States Patent and Trademark Office ("USPTO").

Richmond claims that both of the assignments are invalid and that NICEP and its Directors knew this when NICEP recorded the second assignment with the USPTO. In his seven-count complaint, he alleges that NICEP and its Directors misappropriated the CEP mark in violation of 15 U.S.C. § 1120 (Count I), breached their contractual obligation to pay him for the use of the CEP mark (Count III), were unjustly enriched by their use of the CEP mark (Count IV), are liable for conversion (Count VI), and are liable for trespass to chattel (Count VII). With respect to NICEP individually, Richmond alleges that it engaged in trademark infringement in violation of 15 U.S.C. § 1114(1) (Count II). With respect to the Directors individually, Richmond alleges that they engaged in a civil conspiracy (Count V). The Directors contend that this court cannot exercise personal jurisdiction over them, while NICEP seeks to dismiss Counts V (civil conspiracy), VI (conversion), and VII (trespass to chattel) pursuant to Rule 12(b)(6).

## II. Discussion

### A. The Director's Motion to Dismiss for Lack of Personal Jurisdiction

#### 1. Standard for a Motion to Dismiss for Lack of Personal Jurisdiction

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) based on lack of personal jurisdiction, the court may consider matters outside the pleadings, such as affidavits and other materials submitted by the parties. *See* Fed. R. Civ. P. 12(b). The plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). In making its determination regarding personal jurisdiction, the court must resolve any factual disputes in the plaintiff's favor, but must accept the allegations in the complaint as true only to the extent that they are not controverted by other evidence in the record. *Id.* The court must also accept uncontested jurisdictional facts presented by the defendants as true. *Connolly v. Samuelson*, 613 F. Supp. 109, 111 (N.D. Ill. 1985).

Where the court's subject matter jurisdiction stems from diversity of citizenship, as in this case, the court may assert personal jurisdiction over a defendant only if personal jurisdiction would be proper in an Illinois court. *Michael J. Neuman & Assoc., Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir. 1994). Under the Illinois long-arm statute, Illinois state courts have general jurisdiction over nonresident defendants "doing business" in Illinois and specific jurisdiction over nonresident defendants if the claims arise from their "transactions" in Illinois. 735 ILCS §§ 5/2-209(a) & (b).

The Illinois long-arm statute also contains a "catch-all" provision which allows Illinois state courts to assert personal jurisdiction to the maximum extent permitted by the Illinois and United States Constitutions. 735 ILCS § 5/2- 209(c). Thus, jurisdiction is coextensive with federal due process requirements. *See, e.g., RAR, Inc. v. Tuner Diesel Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). The Due Process Clause of the Fourteenth Amendment to the United States Constitution limits when a state may assert in personam jurisdiction over nonresident defendants. *Pennoyer v. Neff*, 95 U.S. 714, 733 (1878). To assert personal jurisdiction consistent with federal due process, a defendant must have (1) "certain minimum contacts with the forum state such that (2) the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A court's assessment of personal jurisdiction under this standard depends on whether the "general" or "specific" jurisdiction is at issue. *RAR, Inc. v. Tuner Diesel Ltd.*, 107 F.3d at 1277, *quoting Helicopteras Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Specific jurisdiction refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *Id*. at 1277. General jurisdiction is applicable when the lawsuit neither arose nor was related to the defendant's contacts with the forum state. *Id*.

Such jurisdiction is permitted only where the defendant has "continuous and systematic general business contacts" with the state. *Id*.

B. **Specific Jurisdiction & the Fiduciary Shield Doctrine**

Here, the parties agree that the court can potentially exercise only specific jurisdiction over NICEP's Directors. As noted above, specific jurisdiction applies when the court is asserting jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d at 1277, *citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. at 416. The court may exercise specific jurisdiction over the Directors if they "purposefully established minimum contacts within the forum state" and those contacts "make personal jurisdiction fair and reasonable under the circumstances." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d at 1277, *quoting Burger King v. Rudzewicz*, 471 U.S. at 476-77.

According to Richmond, the Directors "had contacts with an Illinois business interest" (Response Memorandum at 3) because: (1) he is a trustee of an Illinois trust with its principal place of business in Illinois and holds a trademark registration for the "CEP" mark; (2) he entered into negotiations with Director David W. Clancy, Jr. regarding the exclusive use of the CEP mark; (3) NICEP ratified the agreement to use the CEP mark in commerce; (4) NICEP's primary business is based on offering the CEP credentials to estate planners, and NICEP's ability to this flows from the license issued by a trust located in Illinois.

Richmond also contends that his complaint contains allegations showing that NICEP's Directors committed tortious acts within Illinois because: (1) they operate a business that derives revenue from providing educational credentials to estate-planning practitioners nationally and thus promote and sell their services to Illinois consumers; (2) NICEP collects $250 in annual

fees and provides educational credentials to twenty-one individuals in Illinois; (3) NICEP entered into a contract with him concerning the ownership and control of an asset that is present in Illinois; (4) current NICEP Directors Randy Freitas, Art Rothfuss, Harold Tincher, David Clancy and Buck Steffens signed the second assignment of the CEP mark which was filed with the USPTO and thereby approved NICEP's use of the CEP mark, which caused Richmond injury in Illinois; (5) NICEP's Directors willfully and maliciously made false representations to intentionally affect Richmond's Illinois interest in the CEP mark; and (6) Richmond suffered an economic injury in Illinois due to the NICEP Directors' conduct.

As noted by the NICEP Directors, only two of these alleged contacts rest on specific actions taken by individual NICEP Directors, as opposed to NICEP. First, Richmond alleges, without providing any specifics, that he entered into negotiations with Director David W. Clancy, Jr. regarding the exclusive use of the CEP mark. Second, Richmond alleges that current NICEP Directors Randy Freitas, Art Rothfuss, Harold Tincher, David Clancy and Buck Steffens caused him to be injured in Illinois when they signed the second assignment of the CEP mark which was filed with the USPTO.

These allegations fail to show that all of the named Directors purposefully established minimum contacts with Illinois. Richmond has not pointed to any evidence or specifics showing that Clancy conducted negotiations in Illinois. Richmond bears the burden of establishing personal jurisdiction by a preponderance of the evidence, *Turnock v. Cope*, 816 F.2d at 333, and his filings fail to point to evidence that satisfies this standard. With respect to the second assignment, the record shows that NICEP – not the Directors individually – filed the assignment with the USPTO. *See* Complaint at ¶¶ 42-50. It is clear beyond peradventure that a corporation and its officers are separate entities, so actions taken by a corporation's officers in the name of

the corporation are not actions by the officers in their individual capacities. *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 628 (7th Cir. 2002).

In any event, even if these contacts were enough to hale all of the Directors into court in Illinois, the fiduciary shield doctrine means that this court cannot exercise personal jurisdiction over them. Under the fiduciary shield doctrine, courts may not exercise jurisdiction over a non-resident corporate official when the only contacts that individual has with Illinois were made in his or her corporate capacity. *Rollins v. Ellwood*, 141 Ill.2d 244, 279 (Ill. 1990) (where an individual defendant's conduct in Illinois "was a product of, and was motivated by, his employment situation and not his personal interests, . . . it would be unfair to use this conduct to assert personal jurisdiction over him as an individual"); *see also Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir.1994) (Illinois recognizes the fiduciary shield doctrine, which "denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal").

Richmond acknowledges the existence of the fiduciary shield doctrine, but argues that the Directors' conduct falls within an exception. Specifically, he points to the well-established rule that the doctrine is inapplicable if a defendant's actions were taken to further his or her personal interests. *See, e.g., Banc Corp USA v. Perez*, No. 05 C 7307, 2006 WL 1594100 at *5 (N.D. Ill. Jun. 5, 2006). In determining whether the personal interest exception applies, courts focus on whether the individual at issue "has a direct financial stake in the company's health." *United Financial Mortg. Corp. v. Bayshores Funding Corp.*, 245 F.Supp.2d 884, 885 (N.D. Ill. 2002). Accordingly, "in reviewing the personal interest exception, the critical factor is the individual's status as a corporate shareholder, not merely whether he is an officer or director." *Plastic Film Corp., Inc. v. Unipac*, Inc., 128 F.Supp.2d 1143, 1147 (N.D. Ill. 2001); *Interlease

*Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F.Supp.2d 898, 912 (N.D. Ill. 2003).

For example, in *United Financial Mortg. Corp. v. Bayshores Funding Corp.,* 245 F.Supp.2d at 895, a bank sued a mortgage loan processor and the mortgage company's president. The *Bayshores* court noted that the processor's contacts with the bank were all made as part of her job, the president signed the loans in his corporate capacity, and neither defendant had a direct financial stake in the mortgage company or stood to individually profit from the alleged wrongdoing. The court thus concluded that the fiduciary shield doctrine prevented it from exercising personal jurisdiction over these defendants. *Id*.

Here, as in *Bayshores*, no evidence suggests that the Directors stood to individually profit from their actions taken in connection with their positions with NICEP. Moreover, the record establishes that none of the Directors own a stake or share of NICEP, which is a not-for-profit entity. Thus, the Directors do not have a financial stake in NICEP and, in any event, could not have individually profited from any of their allegedly wrongful actions.

The court acknowledges that Richmond posits that NICEP did not exist as a corporation when he negotiated with Clancy regarding the use of the CEP mark. However, Richmond does not point to any evidence indicating that Richmond was acting on his own behalf, as opposed to on behalf of a nascent organization, while Clancy has submitted an affidavit stating that his communications with Richmond regarding the CEP mark were made on behalf of NICEP. The court also rejects Richmond's contention that possible issues regarding the corporate status of NICEP mean that the Directors acted in their individual capacities. Even if NICEP's corporate records were not up to date at all times, NICEP still existed as a legal entity.

In addition, the fact that the Directors all use the CEP designation is irrelevant, as their use of this designation is not connected to the allegations in Richmond's complaint. Finally,

Richmond's unsupported contention that the Directors caused the second assignment to be filed with the USPTO directly conflicts with the complaint's allegation that NICEP's attorney filed the assignment with the USPTO on behalf of NICEP. *See* Complaint at ¶¶ 42-50. In essence, Richmond's argument conflates NICEP with its Directors, but from a legal perspective, the company and its Directors are not interchangeable. Thus, the fact that NICEP filed an assignment with the OSPTO does not mean that NICEP's Directors acted to further their own independent and personal interests.

Thus, the fiduciary shield doctrine applies despite Richmond's arguments to the contrary. Accordingly, the court cannot exercise personal jurisdiction over the individual Directors. This means that all of the claims directed at the individual defendants are dismissed without prejudice.

    **B.    NICEP's Motion to Dismiss**

        **1.    Standard on 12(b)(6) Motion to Dismiss**

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must assume the truth of all facts alleged in the complaint, construing the allegations liberally and viewing them in the light most favorable to the plaintiff. *See, e.g., McMath v. City of Gary*, 976 F.2d 1026, 1031 (7th Cir. 1992). Dismissal is properly granted only if it is clear that no set of facts which the plaintiff could prove consistent with the pleadings would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, the court is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims. *Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992).

### 2. Civil Conspiracy (Count V)

NICEP asks the court to dismiss Richmond's civil conspiracy claim, arguing that under the intracorporate conspiracy doctrine, "a conspiracy cannot exist solely between members of the same entity" if the allegedly unlawful acts are within the scope of employment. *Payton v. Rush-Presbyterian-St. Luke's Medical Center*, 184 F.3d 623, 632 (7th Cir. 1999). In response, Richmond contends that the intracorporate conspiracy doctrine does not bar his claims for civil conspiracy amongst NICEP's Directors because the Directors used the CEP designation for their personal benefit as well as to benefit NICEP.

These arguments are beside the point as Count V is directed at the Directors, not NICEP, and the court has found that it cannot exercise personal jurisdiction over the Directors. The motion to dismiss Count V is thus stricken as moot.

### 3. Conversion (Count VI) & Trespass to Chattel (Count VI)

As noted in MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION:

> The common law tort of conversion of a chattel is an old and venerable type of Anglo-American legal claim. In its modern form, conversion is "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." A chattel is a form of tangible property other than real estate. Some courts have stretched the tort of conversion to include the illegal taking of not only tangible property, but also some forms of intangible property. This sometimes leads attorneys to make the allegation that a defendant has "converted" a piece of intellectual property, such as a patent, trademark or copyright.

J. Thomas McCarthy, 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 25:9.1 (4th ed. 2005). This is precisely what has happened in this case, as Richmond asserts that NICEP's use of his mark means that it committed the state law torts of conversion and trespass to chattel.

In general, to state a claim for conversion, Richmond must allege that he has a right to the property at issue, he has an absolute and unconditional right to immediately possess that property, he made a demand for possession, and NICEP wrongfully and without authorization assumed control, dominion, or ownership over that property. *See Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998). In turn, to state a claim for trespass to chattel, Richmond must show that NICEP intentionally dispossessed him of his chattel and that the dispossession resulted in damages. *See Najieb v. Chrysler-Plymouth*, No. 01 C 8295, 2002 WL 31906466 at *10 (N.D. Ill. Dec. 31, 2002), *citing Restatement (Second) of Torts* §§ 217-218, 221-222.

In the special world of trademarks, however, "[c]ourts that have been faced with a claim that a trademark has been 'converted' have rejected the concept outright." 4 McCARTHY ON TRADEMARKS AND UNFAIR COMPETITION at § 25:9.1 (collecting cases). According to Professor McCarthy, this is because trademarks are creatures of the federal laws creating and governing them, so the use of state law to analyze trademark infringement is "the wrong tool for the job." *Id*.

Richmond argues that Illinois courts nevertheless have recognized a cause of action for conversion or trespass to property when the property at issue is either tangible or represented by something tangible. *See In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985) (in Illinois, an action for conversion generally only lies for personal property which is tangible, or at least represented by or connected with something tangible"). Contending that the trademark registration is a tangible representation of his property, Richmond asserts that his claims for conversion and trespass to property state a colorable claim.

The problem with this argument is that Richmond's proposed combination of federal trademark law and Illinois law governing conversion and chattel just doesn't work when the

chattel at issue is a federal trademark. A trademark exists solely because a federal statute memorialized an idea and thereby transformed it into intellectual property protected by federal law. In contrast, property that is typically the subject of a conversion or trespass to chattel action, whether tangible or intangible, exists independently (*e.g.*, a house, a satellite signal, a customer list, etc.). Accordingly, Richmond's conversion and trespass to chattel counts fail to state a claim under Illinois law and are, in fact, just a different and unnecessary restatement of his federal trademark infringement claims. *See* 4 McCARTHY ON TRADEMARKS AND UNFAIR COMPETITION at § 25:9.1, n.7. Counts VI and VII, therefore, are dismissed with prejudice.

### III. Conclusion

For the reasons stated above, the motion to dismiss filed by NICEP's Directors [#20] is granted, and the claims against all of the individual defendants are hereby dismissed without prejudice as this court cannot exercise personal jurisdiction over them. In addition, NICEP's motion to dismiss [#23] is granted in part and denied in part. Specifically, NICEP's motion to dismiss the civil conspiracy claims against the Directors is stricken as moot since the court has already dismissed this count based on lack of personal jurisdiction and NICEP's motion to dismiss Richmond's conversion and trespass to chattel claims (Counts VI and VII) is granted.

DATE: August 15, 2006

Blanche M. Manning
United States District Judge